UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Steven Yeaton,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>Gragil Associates, Inc., and<br>DOES 1-10, inclusive<br>　　　　　　　Defendants. | Civil Action No. 1:14-cv-10695-DPW |

**MEMORANDUM OF GRAGIL ASSOCIATES, INC.
IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

**Introduction**

　　　This action arises out of lawful efforts by the Defendant Gragil Associates, Inc. ("Gragil") to collect a debt owed by the Plaintiff Steven Yeaton ("Yeaton"). Gragil made four telephone calls over the course of seven months to the Plaintiff's cell phone number. He did not answer any of the calls and Gragil did not leave any messages. Thereafter, the Plaintiff called Gragil and requested that Gragil stop calling. Gragil honored this request and made no more calls. Nonetheless, the Plaintiff filed this suit and now alleges that Gragil's debt collection attempts violate the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq.* ("TCPA"), the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"), G.L. Chapter 93A, and the Plaintiff's right to privacy. All claims are groundless.

　　　Gragil is entitled to summary judgment on the Plaintiff's TCPA claim because the Plaintiff provided his cell phone number to his creditor (Gragil's client) and thus expressly consented to receiving calls on his cell phone relating to his account. Gragil is entitled to summary judgment on the Plaintiff's FDCPA and Chapter 93A claims for the same reasons, and also because Gragil as a matter of law did not engage in any harassing, oppressive, abusive,

1

unfair, or deceptive conduct. Finally, Gragil is entitled to summary judgment on the Plaintiff's invasion of privacy claim because the undisputed facts demonstrate that Gragil engaged in no conduct supporting such a claim.

## Statement of Facts

1.  Gragil is a full service accounts receivable management firm. (Local Rule 56.1 Statement of Undisputed Material Facts of Defendant Gragil Associates, Inc. ("Facts") ¶ 1).[1]

2.  A creditor of the Plaintiff Steven Yeaton, Elliot Professional Services ("Elliot"), retained Gragil to collect a debt the Plaintiff owed to it. (Facts ¶ 2).

3.  At the time of service, the Plaintiff provided his cell phone number to Elliot as one of his contact numbers. Gragil relied on this information in attempting to reach the Plaintiff. (Facts ¶ 3).

4.  In connection with Gragil's attempts to collect the Plaintiff's debt, Gragil made a total of four telephone calls to the Plaintiff's cell phone number. The Plaintiff did not answer any of the four calls and Gragil did not leave a message. The four calls were made on different days over the course of seven months. The first call was made on June 22, 2003 at 10:08 a.m. The second call was made on September 27, 2013 at 3:20 p.m. The third call was made on November 9, 2013 at 10:12 a.m. The fourth call was made on January 14, 2014 at 6:03 p.m. (Facts ¶ 4)

5.  On January 15, 2014, the Plaintiff called Gragil and requested that Gragil stop calling him. (Facts ¶ 5).

6.  Gragil abided by this request and made no subsequent calls to the Plaintiff. (Facts ¶ 6).

---

[1] All citations are to the Statement of Facts filed by Gragil, which incorporates and relies on the Affidavit of Gragil President William Gilbody.

7. The Plaintiff did not send Gragil a pre-suit 93A demand letter. (Facts ¶ 7).

**Argument**

I. GRAGIL DID NOT VIOLATE THE TCPA BECAUSE THE PLAINTIFF EXPRESSLY CONSENTED TO RECEIVING CALLS ON HIS CELL PHONE.

The TCPA prohibits the use of automated telephone dialing systems to call a cell phone if the person called has not provided prior express consent to receive calls on his cell phone. The TCPA provides in pertinent part:

> (b) Restrictions on use of automated telephone equipment
>
> (1) Prohibitions
>
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States--
>
> > (A) to make any call (other than a call made for emergency purposes *or made with the prior express consent of the called party*) using any automatic telephone dialing system or an artificial or prerecorded voice—
> >
> > * * * *
> >
> > > (iii) *to any telephone number assigned to a* paging service, *cellular telephone service*, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

47 U.S.C. §227(b)(1)(A)(iii)(emphasis added).

In a 2008 Ruling, the Federal Communications Commission ("FCC") "clarified that autodialed and prerecorded message calls to wireless numbers that are provided by the called party to a creditor in connection with an existing debt are permissible as calls made with the 'prior express consent' of the called party." *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559 (2008) ¶ 9 ("2008 FCC Order"). The 2008 FCC Order provided that "the provision of a cell phone number to a creditor, e.g., as part of a credit

application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." Id.  Further, "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." Id. Accordingly, summary judgment dismissing TCPA claims is appropriate where the debtor has provided her cell number to the creditor, thus consenting to calls to her cell phone. E.g., Chavez v. Advantage Group, 959 F.Supp.2d 1279, 1283 (D. Colo. 2013).

Here, the Plaintiff expressly consented to receiving calls on his cell phone concerning his Elliot account.  It is undisputed that, at the time of service, he provided to Elliot his cell phone number as one of his contact phone numbers.  (Facts ¶ 3).  Under the above authorities, the Plaintiff thus consented to calls to his cell phone number, and his consent to Elliot constitutes consent to Gragil, the third party collector, to call him on his cell phone concerning his account. Because the Plaintiff provided express consent to be contacted on his cell phone concerning the debt, there is no violation of the TCPA.

II.  GRAGIL'S FOUR CALLS TO THE PLAINTIFF OVER THE COURSE OF SEVEN MONTHS WITHOUT LEAVING ANY MESSAGES DO NOT CONSTITUTE HARASSMENT, OPPRESSION, OR ABUSE.

The Plaintiff alleges that Gragil violated the FDCPA by "engag[ing] in behavior the natural consequence of which was to harass, oppress, or abuse the Plaintiff in connection with the collection of a debt." (Complaint ¶20).  The Plaintiff further alleges that Gragil violated the FDCPA by "caus[ing] a phone to ring repeatedly and engag[ing] the Plaintiff in telephone conversations, with the intent to annoy and harass." (Complaint, ¶21).

The FDCPA provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

4

* * *

> **(5)** Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

15 U.S.C. §1692d.  In order to establish that a debt collector has violated subsection (5), a plaintiff must be able to show that the repeated calls were made with the intent to annoy, abuse, or harass.  Gorman v. Wolpoff & Abramson, LLP, 435 F.Supp.2d 1004, 1012 (N.D.Cal.2006), rev'd on other grounds, 584 F.3d 1147 (9th Cir.2009) ("Congress did not intend the FDCPA to completely bar any debt collection calls").  Whether a debt collector's conduct constitutes harassment, oppression, or abuse in violation of the FDCPA is entirely appropriate for resolution by way of a Rule 56 motion.  E.g., Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1178 (11th Cir. 1985).

Here, as a matter of law, Gragil did not engage in any harassing, oppressive, or abusive conduct.  It is agreed that Gragil made only four telephone calls to the Plaintiff's cell phone number over the course of seven months, and that Gragil did not speak to the Plaintiff or leave any messages.  (Facts ¶ 4).  Gragil did not call the Plaintiff multiple times on the same day or at inappropriate hours.  All four of the calls were made between the hours of 10:00 a.m. and 6:00 p.m.  (Id.).  Clearly, such conduct does not constitute harassing, oppressive, or abusive conduct in violation of the FDCPA.  See Udell v. Kansas Counselors, Inc., 313 F.Supp.2d 1135, 1143 (D. Kan. 2004) (holding four automated telephone calls over seven days where no messages were left does not violate FDCPA).

Indeed, courts in many cases involving far more than four calls have rejected FDCPA claims as a matter of law.  E.g., Tucker v. CBE Group, Inc., 710 F.Supp.2d 1301 (M.D. Fla. 2010) (debt collector's 57 calls to plaintiff's home telephone number to collect debt did not violate FDCPA where collector left only six messages, made no more than seven calls in a single

5

day, and did not call back the same day after leaving a message); Arteaga v. Asset Acceptance, LLC, 733 F.Supp.2d 1218 (E.D. Cal. 2010) (creditor's conduct calling debtor daily for five or six months attempting to collect a debt did not rise to level that constituted harassment under FDCPA absent evidence that collector called debtor immediately after she hung up, called multiple times in a single day, called her place of employment, family, or friends, called at odd hours, or called after she requested creditor to cease calling); Lee v. Credit Management, LP, 846 F.Supp.2d 716 (S.D. Tex. 2012) (debt collector's calls did not violate FDCPA where collector placed only a handful of calls, its conversations were fairly brief, collector never called more than once a day, and its representatives did not exhibit rude or threatening behavior); Durthaler v. Accounts Receivable Management, Inc., 854 F.Supp.2d 485 (S.D. Ohio 2012) (debt collector did not violate FDCPA where collector, within 73 days, made 30 calls to debtor, debtor did not answer 71 calls because he recognized collector's telephone number, calls were not made continuously or repeatedly, collector was respectful and polite, and calls were not made at an inconvenient time); Tarrant v. Northland Group, Inc., No. 3:10-cv-1204, 2012 WL 140431 (M.D. TN Jan. 18, 2012 (39 calls in four months; summary judgment for defendant); Chavious v. CBE Group, Inc., No. 10-cv-1293, 2012 WL 113509 (E.D.N.Y. 2012) (36 calls in two months; summary judgment for defendant); Katz v. Capital One, 2010 WL 1039850 (W.D. Va. Mar. 18, 2010) (granting summary judgment for collector who made 17 calls to debtor, including sometimes two calls per day); Saltzman v. I.C. Sys., 2009 WL 3190359 (E.D. Mich. Sept. 30, 2009) (granting summary judgment for collector who made 20-50 unsuccessful calls and 2-10 successful calls in one month).

Moreover, Gragil did not call the Plaintiff after he requested that Gragil stop calling him. On January 15, 2014, after Gragil had made four calls to the Plaintiff, the Plaintiff asked that the

6

company stop. It did so, and made no more calls to the Plaintiff. (Facts ¶¶ 5-6). On this record, the Plaintiff's FDCPA claim fails as a matter of law.

III.  THE PLAINTIFF'S G.L. C. 93A CLAIM IS MERITLESS AS A MATTER OF LAW.

  A.  The Plaintiff Failed To Send A Pre-Suit Demand Letter, Which Is An Element Of His Claim.

G.L. c. 93A, § 9(3) provides that "[a]t least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent." In addition to issuing this demand, the Plaintiff must plead that he has complied with this requirement as a jurisdictional prerequisite to suit. E.g., Kanamaru v. Holyoke Mut. Ins. Co., 72 Mass. App. Ct. 396, 407–08 (2008). The failure to send a pre-suit 93A demand letter requires dismissal of the 93A claim. Id. Here, it is undisputed that the Plaintiff failed to send Gragil a pre-suit demand letter. (Facts ¶ 7). As such, the Plaintiff's G.L. c. 93A claim fails.

  B.  Gragil Did Not Commit Any Unfair Or Deceptive Acts Or Practices Or Cause Any Loss.

Section 2 of G.L. c. 93A prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." An action is "unfair" if it is "(1) within the penumbra of a common law, statutory, or other established concept of unfairness; [or] (2) immoral, unethical, oppressive, or unscrupulous." Gossels v. Fleet Nat. Bank, 453 Mass. 366, 373 (2009). The undisputed facts here establish that, demand notwithstanding, Gragil in any event did not engage in any unfair or deceptive acts or practices. Gragil made only four calls to the Plaintiff's cell number, which the Plaintiff had provided to the creditor, over the course of seven months, and at appropriate times. (Facts ¶¶ 3-4). The Plaintiff did not answer any of the four calls and Gragil did not leave any messages. (Facts ¶ 4). Once the Plaintiff called Gragil and asked it to stop calling his cell

7

phone, Gragil complied and did not make any subsequent calls. (Facts ¶¶5-6). There is nothing unfair or deceptive about Gragil's conduct in attempting to collect a debt owed by the Plaintiff.

Further, a successful claim under G.L. c. 93A requires a showing of an injury or loss suffered by the consumer. Hershenow v. Enterprise Rent–A–Car Co. of Bos., Inc., 445 Mass. 790, 797 (2006). "A consumer is not, however, entitled to redress under [Chapter 93A], where no loss [economic or noneconomic] has occurred." Hershenow, 445 Mass. at 802. Here, the Plaintiff has not alleged any injury or loss he suffered as a result of Gragil's collection activities. (See Complaint generally). As a matter of law, there was no proper demand, no actionable conduct, and no loss.

IV.   GRAGIL DID NOT INVADE THE PLAINTIFF'S PRIVACY.

The Massachusetts Privacy Statute, G.L. c. 214, § 1B, provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy. The superior court shall have jurisdiction in equity to enforce such right and in connection therewith to award damages." Massachusetts does not recognize a theory of liability under the statute for making telephone calls that allegedly interfere with a plaintiff's privacy by intruding on his solitude and violating his interest in being left alone. See Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 409 Mass. 514, 517 (1991). Courts in other states that have recognized a claim for invasion of privacy by intrusion upon seclusion have done so only where the facts clearly demonstrate outrageous conduct, rather than merely annoying or upsetting activities. Rush v. Portfolio Recovery Services, LLC, 2013 WL 5645770, *15 (D.N.J. Oct. 17, 2013). In such cases, courts have adopted the definition of the Restatement (Second) of Torts:

> One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for the invasion of his privacy if the intrusion would be highly offensive to a reasonable person.

Restatement (Second) of Torts 652B (1977).  To prevail on an intrusion-upon-seclusion claim, a plaintiff "must establish that the intrusion 'would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object.'"  <u>Rush</u>, 2013 WL 5645770 at *14.  Phone calls by a debt collector that result only in annoyance to a reasonable person cannot sustain an intrusion on seclusion claim.  <u>Id.</u> at *16.

Here, Gragil plainly did not engage in any outrageous conduct.  It called the Plaintiff only four times over the course of roughly seven months.  (Facts ¶¶ 3-4).  The Plaintiff did not answer any of the calls and Gragil did not leave any messages.  (Facts ¶ 4).  Thereafter, the Plaintiff asked Gragil to stop calling his cell phone, and Gragil honored that request.  (Facts ¶¶ 5-6).  Because Gragil did not engage in any outrageous conduct, the Plaintiff's privacy claim fails as a matter of law.

## Conclusion

For all of the above reasons, Gragil Associates, Inc. requests this Court to allow this Motion and to enter summary judgment in its favor dismissing all counts of the Plaintiff's Complaint.

GRAGIL ASSOCIATES, INC.

By its attorneys,

/s/ John J. O'Connor
John J. O'Connor
BBO #555251
Peabody & Arnold LLP
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA  02210-2261
Tel. (617) 951-2100
Fax. (617) 951-2125
joconnor@peabodyarnold.com

Dated:  September 3, 2014

## **CERTIFICATE OF SERVICE**

  I, John J. O'Connor, hereby certify that on the 3rd day of September, 2014, I served the attached by causing a copy thereof to be served via ECF on the following:

Sergei Lemberg, Esq.
Lemberg & Associates L.L.C.
1100 Summer Street, 3rd Floor
Stamford, CT  06905

              /s/ John J. O'Connor

827555_1
15498-98164